IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., AS BROADCAST LICENSEE OF THE NOVEMBER 22, 2014 MANNY PACQUIAO V. CHRIS ALGIERI WBO WELTERWEIGHT CHAMPIONSHIP FIGHT PROGRAM; | § § § § § § § | 5-17-CV-01193-FB-RBF |
| *Plaintiff*, | § § | |
| vs. | § § | |
| LILY'S BAKERY & DELICACIES, INC., D/B/A LILY'S PHILIPPINE BAKERY & RESTAURANT AND LILLIAN OCHOA, INDIVIDUALLY; | § § § § § | |
| *Defendants*. | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the cross-motions for summary judgment filed by Plaintiff J&J Sports Productions Inc, Dkt. No. 18, and Defendants Lily's Bakery & Delicacies, Inc. and Lillian Ochoa, Dkt. No. 20. Defendants have responded to J&J Sports' motion, Dkt. No. 19, while J&J Sports has opted not to respond to Defendants' motion and instead rely on its own motion for summary judgment.

This case was referred for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-1 and 72 (and Appendix C) of the Local Rules for the United States District Court for the Western District of Texas. The case involves the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (the "FCA"), which provides federal question jurisdiction, *see*

28 U.S.C. § 1331. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

As discussed more fully below, Plaintiff J&J Sports' Motion for Summary Judgment, Dkt. No. 18, should be **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion for Summary Judgment, Dkt. No. 20, should be **DENIED**.

## I. Factual and Procedural Background

Plaintiff J&J Sports, it is undisputed, obtained an exclusive license to exhibit and sublicense at commercial establishments the closed-circuit telecast of the November 22, 2014 Manny Pacquiao v. Chris Algieri WBO Welterweight Championship Fight Program, including the select undercard bout between Vasyi Lomachenko and Chonlatarn Piriyapinyo. *See* Ex. A to J&J Mot. ("Riley Aff.") ¶¶ 3, 4; Ex. A-1. J&J Sports then only authorized exhibition of the fight program at those commercial establishments with which it entered into a sublicense agreement. Riley Aff. ¶¶ 5-7. To safeguard against unauthorized interception or receipt of the program telecast, the transmission "was electronically coded or 'scrambled'" and only establishments with permission from J&J Sports were able to receive and decode the signal. *Id.* ¶ 6.

On November 22, 2014, at approximately 9:20 am, an auditor for J&J Sports claims he observed two televisions serving approximately 20 individuals at Defendant Lily's Bakery & Restaurant exhibiting the Lomachenko and Piriyapinyo bout. *See* Riley Aff. ¶ 8; Ex. A-2 to J&J Mot. According to the auditor, he paid a $15 admission fee to enter the restaurant. *See id.* J&J Sports includes with its motion for summary judgment a video purportedly taken by the auditor on the evening in question. *See* Ex. F to J&J Mot.

The story is in large part the same according to Defendants' version of events. Defendants, to start, don't dispute that the fight was exhibited at Lily's Bakery on the date in question and they likewise don't dispute that they didn't receive prior permission from J&J

2

Sports to exhibit it. *See* Exs. C & D to J&J Mot. Defendants instead submit evidence reflecting that Defendant Ochoa purchased from Direct TV for $60 the ability to view the fight. *See* L. Ochoa Decl. Based on the representations by one of Direct TV's representatives, as well as the fact that Direct TV installed a satellite dish at the business premises, Ochoa swears under penalty of perjury that she believed this purchase was lawful and permitted her to exhibit the fight on the night in question in the manner in which it was shown. *See id.*

Defendants' version of events does offer to further clarify a few matters. The fight, according to Ochoa, was only exhibited privately to approximately 18 of Ochoa's family members after Lily's Bakery had closed for the day. *See* L. & J. Ochoa Decls. The front door at the bakery had been left open that evening to allow family members to go outside to smoke, and at some point in the evening, Ochoa and her daughter in law explain, a male stranger came to the door and entered. *See id.* This led the daughter-in-law, Jeaneth Ochoa, to inquire if the stranger needed assistance. *See id.* The stranger—presumably J&J Sports' auditor—asked about the price to watch the fight, and Jeaneth responded that the bakery only charged for food. *See id.* The man explained he was not very hungry, handed Jeaneth $10 in cash, and sat down at one of the bakery's tables, stating that he would wait for his friend. *See id.* Although Ochoa and Jeaneth don't fully explain why Jeaneth permitted the man to enter the closed establishment, sit down to wait for a friend, and request food, the man apparently left before Jeaneth could prepare the food she intended to bring for him. *See id.* Both Defendant Ochoa and Jeaneth swear under penalty of perjury that the fight program was not intended for viewing by the public and, further, that Defendant Ochoa was not aware of the stranger's presence. *See* L. & J. Ochoa Decls.

On November 20, 2017, J&J Sports sued Defendants Lily's Bakery & Delicacies, Inc. d/b/a Lily's Philippine Bakery & Restaurant and its owner Lillian Ochoa, individually. J&J

Sports alleged that Defendants illegally intercepted and exhibited the fight at Lily's Bakery on November 22, 2014 in violation of §§ 553 or 605 of the FCA.

## II. Legal Standards

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts reflecting a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."

*Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

Although J&J Sports cites FCA § 553 in its Complaint, it does so in the context of raising a claim for relief under whichever of either § 605 or § 553 properly applies, but not both. Only § 605 could apply here; it addresses unauthorized interception of signals through radio or satellite (but not cable) communications, which is what is alleged to have happened here. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L. C.*, 751 F.3d 346, 351 (5th Cir. 2014). Section 553 applies in the opposite scenario and not is not implicated here. *See* Riley Aff. ¶ 6 ("The transmission of the Event originated via satellite."). J&J Sports' motion is therefore construed as only raising a claim for relief under § 605.

As part of its requested judgment, J&J Sports seeks: (1) statutory damages of $10,000, *see* 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages of $50,000 for Defendants' alleged willful acts, *see* 47 U.S.C. § 605(e)(3)(C)(ii); (3) attorneys' fees in the amount of one-third of J&J Sports' total recovery or, in the alternative, a lodestar award of $2,000, along with attorney's fees for post-trial and appellate services; and (4) costs and post-judgment interest.

*Liability*. Section 605 of the FCA prohibits an unauthorized person from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 605 further prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. *Id.* The FCA affords a private right of action to "[a]ny person aggrieved by any violation of" the Act. 47 U.S.C. § 605(e)(3)(A). "The FCA is a strict liability statute, and the

plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *Joe Hand Promotions, Inc. v. Macias*, No. H–11–1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012).

The uncontroverted evidences establishes conclusively that, on November 22, 2014, the undercard bout between Lomachenko and Piriyapinyo was broadcast to individuals on at least one projector screen at Defendant Lily's Bakery. As already explained, Section 605 is a strict liability statute. It is uncontested that Lily's Bakery is a commercial establishment that did not pay J&J Sports a sublicense fee. It is also uncontested that the transmission of the fight was encrypted. These facts conclusively establish liability under this strict-liability statute.

Although Defendants argue and submit evidence suggesting that the fight was only intended for family viewing, that the bakery was closed for business at the time in question, and that they purchased a residential package from Direct TV, these matters cannot affect liability under the strict-liability regime that governs here. *See J&J Sports Prods., Inc. v. Barajas*, No. 7:16-CV-00464, 2018 WL 1992668, at *2-3 (S.D. Tex. Apr. 27, 2018) ("Although § 605 contains an exception for private viewing, it is not triggered if the transmission in question is encrypted"); *G&G Closed Circuit Events, LLC v. Cisneros*, No. 5:15-CV-302-DAE, 2016 WL 1322485, at *2 (W.D. Tex. Apr. 1, 2016) (explaining that the broadcast of a licensed event at a commercial establishment using a residential license violates § 605) (citing *Joe Hand Promotions, Inc. v. Ol'River Hideaway, LLC*, No. 5:15-CV-187-DAE, 2016 WL 590251, at * 3 (W.D. Tex. Feb. 11, 2016), and *Garden City Boxing Club, Inc. v. Vinson*, No. 3:03-CV-0700-BD(P), 2003 WL 22077958, at * 2 (N.D. Tex. May 24, 2003)).[1]

---

[1] *See also Joe Hand Promotions, Inc. v. Canales*, No. 7:16-CV-00460, 2017 WL 3671092, at *2 (S.D. Tex. June 13, 2017) ("To establish liability under § 605, the plaintiff need only show that the [Fight] was shown in the defendant's establishment without the plaintiff's authorization.) (quotations omitted); *J & J Sports Prods., Inc. v. Orellana*, No. CIV.A. H-11-0574, 2012 WL

Ochoa is also subject to individual liability under the FCA, notwithstanding her arguments to the contrary. A person can be individually liable under Section 605 of the FCA if she had "(1) the right and ability to supervise the unauthorized activities of the establishment in those activities and (2) a direct financial interest in those activities." *J&J Sports Prods., Inc. v. McLaughlin*, No. CV H-16-2450, 2017 WL 3235670, at *2 (S.D. Tex. Jul. 31, 2017). This test typically applies "to determine individual liability even where the individual [defendant] is an officer of the corporate entity that owns the establishment where the violation occurred." *J&J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *4 (W.D. Tex. May 2, 2016). Here, Ochoa admits that on the date in question she was an officer, director, and manager of Lily's Bakery and had both the right and ability to supervise the activities in the establishment. *See* Ex. D to J&J Mot., Resp. to Req. for Admis. Nos. 41, 42, 45, 46. As the owner and corporate officer, Ochoa would have had a direct financial interest in the activities of Lily's Bakery. *See J & J Sports Prods., Inc. v. Rest. & Taqueria Cristina*, No. 3:11-CV-3104-N-BF, 2013 WL 3878589, at *5 (N.D. Tex. Jul. 29, 2013); *Zuffa, LLC v. Trappey*, No. 11–0006, 2012 WL 1014690, at *5 (W.D. La. Mar. 22, 2012). Accordingly, vicarious liability is appropriate as to Ochoa.

There is no merit to Defendants' argument that the statute of limitations precludes J&J Sports' claim. Although Section 605 of the FCA doesn't contain an express limitations period, courts in such a situation will typically adopt the closest state-law analogue unless doing so would "frustrate or interfere with the implementation of national policies or be at odds with the purpose or operation of federal substantive law." *Prostar v. Massachi*, 239 F.3d 669, 672 (5th Cir. 2001) (quotations and brackets omitted). If such frustration or interference with national

---

3155728, at *4 (S.D. Tex. Aug. 2, 2012) ("The FCA is a strict liability statute, so a plaintiff, as exclusive licensee, need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization.")

policies or purposes, or the operation of federal substantive law, is at issue then courts apply a limitations period from an analogous federal law. Accordingly, the decision in *Prostar* conducted this analysis with respect to the FCA and determined that instead of applying potentially 50 different state-law limitations periods the federal Copyright Act's three-year statute of limitations applies to a plaintiff's claims brought under the FCA. *Id.* at 677-78 ("A single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA.").

Applying, as Defendants urge, a two-year statute of limitations governing claims under the Texas Theft Liability Act, Tex. Prac. & Rem. Code § 134.002, would run afoul of *Prostar*. A number of federal district courts addressing this issue have reached much the same conclusion and applied the Copyright Act's three-year limitations period. *See, e.g.*, *J & J Sports Prods., Inc. v. Lares*, No. 3:12-CV-0968-N-BH, 2013 WL 625731, at *3 (N.D. Tex. Jan. 31, 2013), *report and recommendation adopted*, 2013 WL 625729 (N.D. Tex. Feb. 20, 2013) (collecting authorities); *J&J Sports Prods., Inc. v. Vazquez*, No. EP-14-CV-00150-DCG, 2014 WL 12586762, at *3 (W.D. Tex. Jul. 18, 2014). Defendants' invocation of various nonbinding decisions in support of their contention that that *Prostar* does not apply here is unconvincing.

The events giving rise to this case occurred on November 22, 2014, and J&J Sports initiated this litigation on November 20, 2017. As a result, the FCA claims at issue are not time-barred.

For all these reasons, there is no genuine dispute over any material fact pertaining to liability, and summary judgment for J&J Sports is warranted as to liability under § 605 against Defendants Lily's Bakery and Ochoa individually. All that remains is the issue of damages.

*Statutory Damages of $3,300.* Under the FCA, an aggrieved party may be awarded either: (1) "the actual damages suffered by him as a result of the violation and any profits of the

violator that are attributable to the violation which are not taken into account in computing the actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I), or (2) statutory damages for each violation "in the sum of not less than $1,000 or more than $10,000, as the court considers just," 47 U.S.C. § 605(e)(3)(C)(i)(II). J&J Sports seeks $10,000 in statutory damages—the maximum amount allowable—asserting that this amount is fair and reasonable given the benefits Defendants received and the damages J&J Sports suffers to its customer base and good will when an establishment such as Lily's Bakery offers stolen programming to its patrons. *See* Mot. at 12-15; Riley Aff. ¶¶ 11-15.

In the Western District of Texas, prevailing FCA plaintiffs are most often awarded a flat sum of statutory damages. The sum is derived from the costs the defendant would have incurred to purchase the rights to the broadcast, plus an additional amount sufficient to deter future violations and account for additional damages incurred by the plaintiff, such as the potential erosion of the plaintiff's customer base and profits made by the defendant in selling food and drinks to patrons.[2] This damages calculation, therefore, can be performed at the summary judgment stage.

The undisputed evidentiary record and an affidavit from J&J Sports' counsel Thomas P. Riley support an award for statutory damages in excess of the sublicense fee. *See* Riley Aff. According to Riley, had Defendants lawfully purchased the rights to show the fight they would have incurred a sublicense fee based on the capacity of the establishment. *See id*. ¶ 7 (incorporating by reference the Rate Card for the fight). According to the summary judgment

---

[2] *See e.g.*, *J&J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *5 (W.D. Tex. May 2, 2016); *G&G Closed Circuit Events, LLC*, 2016 WL 1322485, at *3; *Joe Hand Promotions, Inc. v. Ol' River Hideaway, LLC*, No. 5:15-CV-187-DAE, 2016 WL 590251, at *3 (W.D. Tex. Feb. 11, 2016); *J&J Sports Prods., Inc. v. Chucho's Mexican Rest., Inc.*, No. 1-15-CV-361 RP, 2015 WL 7301183, at *3 (W.D. Tex. Nov. 18, 2015); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008).

record, Lily's Bakery has a capacity of under 100 people,[3] which produces a sublicense fee of $2,000. In this district, to reach a "reasonable award" that takes into account direct and indirect losses suffered as well as the need to deter future violations it is common to "treble what would have been the cost had Defendants followed the law." *Chucho's Mexican Rest.*, 2015 WL 7301183, at *3. Sometimes lesser amounts can be sufficient to deter the unlawful conduct under the circumstances. *See, e.g., Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, 2015 WL 539649, at *5 (W.D. La. Feb. 6, 2015) (finding an award of twice the license fee sufficient to deter conduct); *J&J Productions, Inc. v. Little Napoli, Inc.*, No. H-13-1237, 2014 WL 3667903, at *3 (awarding one and one-half times license fee as statutory damages); *G&G Closed Circuit*, 2016 WL 1322485, at *2 (finding an award of $2,200 in addition to the $800 license fee "sufficient and reasonable to deter future violations"); *Bandera Cowboy Bar*, 2016 WL 2349123, at *5 (awarding plaintiff $3,500 in statutory damages, which consisted of the $2,200 sublicense fee plus an additional $1,300).

The undisputed circumstances of this case merit a lesser award. Other than the $10 to $15 Defendants received from J&J Sports' auditor, there is no evidence presented by J&J Sports in support of its summary judgment request to show that Defendants profited from the broadcast, including through food or drink sales. The evidence on this point appears to point in the other direction, as both Ochoa and her daughter in law claim that no profits were made from the broadcast. Further, although Defendants used a residential cable package to broadcast the fight, there is no evidence that Defendants moved residential satellite hardware to Lily's Bakery. Instead, Defendant Ochoa explains, and J&J Sports does not controvert, that she believed Direct TV had authorized her to view the fight at her commercial establishment based on the representations of Direct TV's representative and Direct TV's installation of the satellite on her

---

[3] *See* Ex. D to J&J Mot., Req. for Admin. No. 65.

business premises. Moreover, at most only approximately 20 people viewed the fight, even according to J&J Sports' version of events. The only evidence in support of an award of statutory damages here is Riley's affidavit attesting to the erosion to J&J Sports' customer base and good will, which is at issue whenever a violation is committed. Accordingly, the undersigned concludes that $3,300 in statutory damages—which accounts for J&J Sports' direct loss of $2,000 plus an additional $1,300—is an appropriate award of statutory damages under the undisputed circumstances. *See, e.g.*, *Bandera Cowboy Bar LLC*, 2016 WL 2349123, at *5 (awarding plaintiff $3,500 in statutory damages where plaintiff charged a license fee of $2,200 to comparably sized commercial establishments and plaintiff submitted evidence that defendant's actions eroded its customer base); 47 U.S.C. § 605(e)(3)(C)(iii) (recognizing that a court has discretion to reduce a damages award to a sum of not less than $250 "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section."

*No Additional Damages.* FCA violations "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" authorize "the court in its discretion [to] increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). J&J Sports maintains Defendants acted "willfully" as Ochoa could not have "innocently" accessed the broadcast; the satellite signal was "scrambled" and was not available to the general public. *See* Mot. at 15; Riley Aff. ¶¶ 6-10. Defendants' violation, according to J&J Sports, would have required the use of specialized equipment such as an unauthorized decoder or satellite access card, or required J&J Sports to authorize a satellite provider to unscramble the reception. Riley Aff. ¶¶ 9-10. But there is one other method that J&J Sports does not account for and one Defendants admit to using—Defendant Ochoa purchased a residential package through Direct TV. While such actions may

under certain circumstances support a finding of willfulness, there is no evidence here that Defendants diverted the program or misrepresented Lily's Bakery as a residential address.[4] Instead, according to Ochoa, the Direct TV representative installed a satellite at Lily's Bakery and led her to believe that payment of the residential fee would authorize her establishment to broadcast the fight.

There is also limited evidence in the record to suggest that Defendants committed the violation for purposes of direct or indirect commercial advantage or private financial gain, which is a necessary prerequisite to impose an additional damages award. To determine willfulness for commercial gain, courts look for evidence of a cover charge, increased prices for food and drinks, an increased number of patrons attending the establishment, and advertisements. *See Zuffa*, 2012 WL 1014690, at *5. Although the auditor here swears that Lily's Bakery assessed a $15 cover charge on all its patrons on the night in question, there is a genuine dispute of material fact on this issue. The auditor concedes that Lily's Bakery did not advertise or promote the fight in any way,[5] and there is no evidence that Defendants charged an increased price for food of drinks (or even offered alcoholic beverages for sale), or that the event drew a larger than normal crowd. *Cf.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *4 (finding commercial motive where defendant showed the event to its patrons while offering alcoholic beverages for sale); *J&J Sports Prods., Inc. v. Santos*, No. DR-17-CV-0028-AM-CW, 2018 WL 1887294, at *5 (W.D. Tex. Feb. 20, 2018) ("By blatantly advertising a free viewing of a program that would otherwise cost money if viewed privately in one's home, Defendants intended to entice patrons

---

[4] *Cf. G&G Closed Circuit*, 2016 WL 1322485, at *3 ("To divert a residential cable package into a commercial establishment is a deliberate act that evinces willfulness"); *J&J Sports Prods., Inc. v. Orellana*, No. CIV.A. H-11-0574, 2012 WL 3155728, at *4 (S.D. Tex. Aug. 2, 2012) (registering a commercial establishment as a residential site is evidence of willfulness and may support an award of enhanced damages).

[5] *See* Ex. A-2 to J&J Mot.

into their lounge to create business or offer patrons incentives not to leave (and spend more money).") Accordingly, the summary judgment record does not support an award of additional damages here, even if the cover-charge issue were ultimately decided in J&J Sports' favor.

Moreover, the award of additional damages for a willful violation is discretionary. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Given the circumstances here, and for the reasons already stated, an award of additional damages for a willful violation would not be warranted here as a matter of discretion, even if all fact disputes relating to damages were to turn out in J&J Sports' favor.

*Attorneys' fees.* The FCA provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly, an award of attorneys' fees is mandatory for a prevailing party in a FCA case, although the amount awarded must be reasonable. *Id.*; *see also J&J Sports Prods., Inc. v. Rivera*, No. EP-14-CV-00343-KC, 2015 WL 1137473, at *6 (W.D. Tex. Mar. 12, 2015).

Here, a fair and equitable award of fees to the prevailing party, J&J Sports, is derived from the lodestar rate, *i.e.*, the hours the attorneys actually expended times a reasonable hourly rate. *See, e.g.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *5 (declining one-third contingent fee requested and instead awarding fees according to lodestar method); *J&J Sports Prods. v. Rivera*, No. CIV.A. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. Jul. 14, 2014) (finding it "more equitable" to apply the lodestar as opposed to one-third contingency fee); *J&J Sports Prods., Inc. v. Rodriguez*, No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D. Tex. Jul. 31, 2013) (same). J&J Sports' attorney David M. Diaz details in his affidavit his experience, that his firm provides an hourly rate of $250 for similar cases, and notes that he and other attorneys at his firm have expended or will expend a minimum of eight hours on this litigation through the preparation of the motion for summary judgment. *See* Diaz Aff. Nothing in Diaz's Affidavit

justifies departing from the lodestar rate based on the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974). *See, e.g.*, *Sanders v. Barnhart*, No. 04–10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005) (per curiam) ("[I]t is not necessary for a district court to examine each of the factors independently if it is apparent that the court has arrived at a just compensation based upon appropriate standards"). Trimming the hourly rate to a more modest $200 per hour for this rather straightforward action and taking judicial notice of the rates charged in this locality for this type of litigation, the undersigned concludes that an award of $1,600 in attorneys' fees is reasonable under the circumstances of this case.

J&J Sports may request a fees award for post-trial and appellate services when, and if, any such fees are actually incurred. *See Rivera,* 2014 WL 3533472, at *3 (rejecting as "speculative" and "premature" plaintiff's request for an award of fees in the event that post-trial, pre-appeal, and appellate services are required); *Kingvision Pay–Per–View, Ltd. v. Guerrero*, No. 3:08–CV–1970–G (BF), 2009 WL 1973285, at *5 (N.D. Tex. Jul. 7, 2009) (holding that a plaintiff may apply for a contingent award for post-trial services if and when such fees are incurred).

Finally, J&J Sports should be awarded its reasonable costs if it timely files a bill of costs supported by appropriate documentation and in the form required by the Clerk of the Court. *See* Local Rule CV-54.

### IV. Conclusion

Accordingly, having considered the parties' cross-motions for summary judgment, Dkt. Nos. 18 & 20, the case file, the response filed by Defendants, Dkt. No. 19, and the lack of response filed by Plaintiff J&J Sports to Defendants' motion, the undersigned recommends that Plaintiff's Motion for Summary Judgment, Dkt. No. 19, be **GRANTED IN PART AND DENIED IN PART** as to Plaintiff's request for damages, fees, and costs, as follows: (1) $3,300

in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $0 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) $1,600 in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii); and (4) costs in an amount to be determined pursuant to the procedure specified in Western District of Texas Local Rule CV-54. Defendant should also pay post-judgment interest, to be calculated and compounded pursuant to 28 U.S.C. § 1961, until the judgment is paid in full. Defendants' Motion for Summary Judgment, Dkt. No. 20, should be **DENIED** in its entirety.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).

Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 23rd day of April, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE